UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| WABASH TAX SERVICE, INC., <br>     *Plaintiff*, <br><br>     *vs.* <br><br> STADLER & CO., INC., <br>     *Defendant*. | ) <br> ) <br> ) <br> )     No. 2:14-cv-00052-JMS-MJD <br> ) <br> ) <br> ) |

## ORDER

Plaintiff Wabash Tax Service, Inc. ("Wabash") brought this action against its competitor, Defendant Stadler & Co., Inc. ("Stadler"), asserting claims of defamation under state law and trade disparagement under the Lanham Act, 15 U.S.C. § 1125(a). Presently pending before the Court is Stadler's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Filing No. 14.] For the reasons that follow, Stadler's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## I.
### STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a

claim for relief.  See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level."  *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## II.
### BACKGROUND

The following factual background is drawn from the allegations in Wabash's Complaint, and consistent with the standard of review, the allegations are taken as true and all reasonable inferences are drawn in Wabash's favor.  The factual background focuses on the allegations necessary to understand and decide the Motion to Dismiss.

Wabash is located in Terre Haute, Indiana, and provides tax preparation services to its clients.  [Filing No. 1 at 1.]  Its principal office is on Wabash Avenue in Terre Haute, and the company is owned and operated by Gerald Dix.  [Filing No. 1 at 1.]  Stadler is a competitor of Wabash and also provides tax preparation services to its clients.  [Filing No. 1 at 1.]  Stadler is operated by Andrew Stadler, and its principal place of business is also in Terre Haute.  [Filing No. 1 at 1.]

Employees of both Wabash and Stadler prepare federal and state tax returns for their respective clients.  [Filing No. 1 at 1.]  To provide these services, tax preparers must hold a Preparer Tax Identification Number ("PTIN"), but there are no other licensure requirements for tax preparers imposed by the Internal Revenue Service, the United States Department of Treasury, or the Indiana Department of Revenue.  [Filing No. 1 at 1.]

At issue in this lawsuit are two commercials run by Stadler on multiple Terre Haute radio stations.  The first ("First Commercial") stated as follows:

> Taxes, taxes, taxes... those darn taxes. Affordable Care Act or Obamacare is a massive tax bill with healthcare sprinkled in it. Obamacare started off as a 2500 page document that's now over 25,000 pages and growing every day. Obamacare is the largest tax increase Americans have ever seen. An 800 billion dollar tax increase. You will hear other tax preparers say for 50% less or one half price of anyone else. *These Wabash Avenue, Third Street and National Avenue tax preparers are unlicensed. And you will owe the IRS hundreds, or thousands of dollars.* Per the IRS, over 60% of the tax preparers in the Wabash Valley are unlicensed. This is not a time for amateurs who want to be tax preparers. This is a game changer, you need a plan. You need a serious plan. A licensed tax professional, an enrolled agent. America's Tax Expert. Stadler the Tax Pros.

[Filing No. 1 at 2 (emphasis in original).]

Wabash alleges that this commercial was clearly making reference to Wabash because Wabash is the only tax preparation service that has (1) an office on National Avenue in West Terre Haute, and (2) offices located on both Wabash Avenue in Terre Haute and National Avenue in West Terre Haute. [Filing No. 1 at 2.] Moreover, Wabash asserts that the commercial's statement that these tax preparers are "unlicensed" is false because Mr. Dix and all Wabash tax preparers meet all the necessary requirements to prepare federal and state tax returns. [Filing No. 1 at 2.]

Stadler ran another commercial ("Second Commercial") on Terre Haute radio stations, which stated:

> Taxes, taxes, taxes. File your tax returns right here for the unbelievable price of twenty-five bucks. *Come on in and meet our brand new unlicensed tax preparers. But wait, there's more. How about our $1,000 give-a-way that's really a scam to get you in the door. Ladies and gentlemen, we are the home of fraud, flim-flams and unethical tax preparers. We'll give you hidden fees, a bogus IRS check and as a added bonus, a home visit from the IRS.*
>
> [Sound of police siren....]
>
> Tax fraud in the United States is up over 28.5 billion dollars. Don't gamble your tax returns. Hire an enrolled agent. Enrolled agents are licensed by the U.S. Department of Treasury with unlimited right to practice. They are validated each year through extensive and rigorous educational requirements. Enrolled agents

are America's elite tax experts.  Visit your local enrolled agents at Stadler & Company Tax Service. . . .

[Filing No. 1 at 3 (emphasis in original).]

Wabash alleges that it is "the only tax preparer operating in Vigo County, Indiana which has a $1,000 giveaway, and it has marketed the giveaway extensively, through billboards, internet, and broadcast advertisements." [Filing No. 1 at 3-4.] "By making reference to the $1,000 giveaway," Wabash alleges, "Stadler intended and communicated to radio listeners that the commercial was making reference solely to Wabash Tax." [Filing No. 1 at 4.]

## III.
### DISCUSSION

Stadler moves to dismiss all of Wabash's claims. The Court will address each claim in turn.

### A. Defamation

Stadler asks the Court to dismiss Wabash's defamation claims predicated on both commercials. [Filing No. 15 at 5-7.] The Court begins by setting forth the general legal standards governing defamation claims under Indiana law, then turns to the parties' arguments regarding each commercial.

To maintain an action for defamation, "the plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007). Moreover, "[a]ny statement actionable for defamation must not only be defamatory in nature, but false." *Trail v. Boys & Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). Finally, most important to the instant motion is the requirement that "[d]efamatory words . . . refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994).

*1.     First Commercial*

Stadler contends that the First Commercial's "vague and general references to '[t]hese Wabash Avenue, Third Street and National Avenue tax preparers' simply do not identify [Wabash] in any ascertainable way." [Filing No. 15 at 6.] Moreover, Stadler argues that the First Commercial concerned a group of tax preparers and that Indiana has not recognized a tort for group defamation. [Filing No. 15 at 6.]

Wabash responds that the First Commercial adequately identifies it because it is "the only tax preparer having an office located on one of th[e] streets, National Avenue," and it "is the only tax preparer in the Terre Haute area that has offices both on Wabash Avenue and National Avenue." [Filing No. 21 at 8.] As to the group defamation argument, Wabash argues that, "[w]hile Stadler may have intended to defame several of its competitors in the [First] Commercial, its specific reference to National Avenue and Wabash Avenue definitely makes it reasonable to conclude that Wabash was an intended and ascertainable subject of the [First] Commercial." [Filing No. 21 at 8.]

The Court need not specifically delve into the ascertainability issue because the commercial constitutes unactionable group defamation. "According to the doctrine [of group libel], a person who defames a group or class of persons may be held liable to an individual belonging to that class" in certain limited circumstances. *Sanderson v. Indiana Soft Water Servs., Inc.*, 2004 WL 1784755, *7 (S.D. Ind. 2004). However, "the concept of group libel has never been accept-

ed by an Indiana court."[1]  *Id.*; *see Gintert v. Howard Publications, Inc.*, 565 F.Supp. 829, 832 (N.D. Ind. 1983) ("The law is well settled that defamation of a large group gives rise to no cause of action on the part of an individual member of that group unless he can show special application of the defamatory matter to himself.").

It is clear that the First Commercial refers to a group of tax preparers that are located on three different streets.  [*See* Filing No. 1 at 2 ("These Wabash Avenue, Third Street, and National Avenue tax preparers are unlicensed.").]  Indeed, Wabash implicitly recognizes as much in its brief.  First, it acknowledges that Stadler's First Commercial "may have . . . defame[d] *several of its competitors*."  [Filing No. 21 at 8 (emphasis added).]  Second, Wabash points to its allegations that it is the only tax preparer on National Avenue and the only tax preparer that has offices on both National Avenue and Wabash Avenue.  [Filing No. 21 at 8.]  Notably absent are allegations that there are no tax preparers on Third Street or additional tax preparers on Wabash Avenue.  But in any event, at most, Wabash's affirmative allegations demonstrate that it was one of a group of tax preparers referred to in the First Commercial.  Because a claim for group defamation has never been recognized by an Indiana court, *see Sanderson*, 2004 WL 1784755, at *7; *Gintert*, 565 F.Supp. at 832, the Court must dismiss Wabash's defamation claim predicated on the First Commercial.

---

[1] The Court recognizes that the Restatement of Torts recognizes a claim for group libel in certain circumstances.  *See* Restatement (Second) of Torts § 564A.  But, again, the "concept of group libel has never been accepted by an Indiana court," *Sanderson*, 2004 WL 1784755, at *7, and "there is no suggestion that Indiana would adopt the limited concept of group libel set out in the Restatement," *Gintert*, 565 F.Supp. at 833.  Moreover, although *Sanderson* refers specifically to group libel—which is a specific type of defamation—rather than group defamation more generally, Indiana courts have not recognized group defamation either.  *See Gintert*, 565 F.Supp. at 832.

2.  *Second Commercial*

Stadler maintains that the Second Commercial's "vague and general reference[] to . . . a '$1,000 giveaway'" does not identify Wabash and thus is not actionable.[2] [Filing No. 15 at 6.] Specifically, Stadler argues that Wabash's "attempt to connect the dots from Stadler's vague and general statement in its radio ads to [Wabash] is simply not plausible under *Iqbal* and *Twombly*." [Filing No. 15 at 6-7.]

Wabash responds that Indiana law makes clear that the allegedly defamed person need not be specifically ascertained in the statement, but only ascertainable, and that its allegations regarding the Second Commercial meet this standard. [Filing No. 21 at 4-5.] Wabash highlights that the Second Commercial referred to tax preparers that have a $1,000 giveaway, and that Wabash was the only tax preparer having such a $1,000 giveaway when the Second Commercial was run, which, taken together, make Wabash the ascertainable subject of the commercial. [Filing No. at 5.]

Stadler replies that Indiana law precludes the Court from considering allegations extrinsic to the allegedly defamatory statement itself when determining whether the statement is defamatory. [Filing No. 25 at 2 (citing *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1230 (Ind. Ct. App. 2005); *Ducker v. Amin*, 2014 WL 1018050, *6-7 (S.D. Ind. 2014)).] Accordingly, says Stadler, the Court cannot consider Wabash's extrinsic allegations—such as the allegation that it was the only tax preparer to have a $1,000 giveaway—when deciding whether the allegedly defamatory statement sufficiently identifies Wabash. [Filing No. 25 at 2-3.]

---

[2] Stadler's group defamation argument is only directed at the First Commercial. [*See* Filing No. 15 at 6.] But even if it had advanced this argument regarding the Second Commercial, for the reasons explained below, it would not lead to dismissal of Wabash's claim based on that commercial, as it is plausible that the Second Commercial refers only to Wabash.

Both parties acknowledge the longstanding rule that "[d]efamatory words are not actionable unless they refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Schrader*, 639 N.E.2d at 261; *see Harvey v. Coffin*, 5 Blackf. 566, 1841 WL 2517, *1 (Ind. 1841) (holding that "[i]f it be uncertain of whom the [allegedly slanderous] words were spoken, the action is not maintainable," and that statements such as "I caught one of [the man's] boys stealing corn" are not actionable "unless the one of whom the defendant spoke can be identified"). The primary dispute the Court must resolve is whether it is appropriate to consider allegations extrinsic to the allegedly defamatory statement itself when determining whether the statement refers to an ascertainable person.

Defendants rely on *Cortez* and *Ducker* in arguing that the Court cannot consider extrinsic allegations. [Filing No. 25 at 2.] In *Cortez*, the Indiana Court of Appeals stated the following: "[w]hen determining whether a statement was defamatory, we may not consider extrinsic facts or circumstances; rather we must simply view the communication in its context and give it its plain and natural meaning." 827 N.E.2d at 1230 (citing *Branham v. Celadon Trucking Servs, Inc.*, 744 N.E.2d 514, 522 (Ind. Ct. App. 2001)). The Court in *Ducker* relied on this statement from *Cortez* to hold that the plaintiff could not "resort to extrinsic evidence to determine whether Defendant's [allegedly defamatory statement] refers to her." 2014 WL 1018050, at *6. This Court, however, reads *Cortez* and Indiana defamation law differently.

When the Indiana Court of Appeals stated in *Cortez* that "[w]hen determining whether a statement was defamatory, we may not consider extrinsic facts or circumstances," 827 N.E.2d at 1230, it was referring to the specific inquiry of "whether the statement was defamatory," *id.*, not, as Stadler argues, whether the statement referred to the plaintiff. The context in which the statement appears in *Cortez* supports this interpretation: the statement was made at the end of a short

paragraph defining what constitutes a defamatory statement (one that is harmful to the plaintiff's reputation), that does not otherwise discuss the ascertainability of the plaintiff. *See id.* Moreover, the case relied upon in *Cortez* supports this more narrow reading. *See id.* (citing *Branham*, 744 N.E.2d at 522). The Indiana Court of Appeals in *Branham* held that extrinsic evidence cannot be considered only when assessing "*the defamatory nature* of the communication." *Branham*, 744 N.E.2d at 522 (emphasis added). In other words, when deciding whether a communication is harmful to the reputation of the plaintiff, the harmful character of the statement must be evident from the statement itself, without reliance on extrinsic evidence. In short, forbidding the use of extrinsic evidence when determining whether a statement was harmful to the plaintiff is different than forbidding such evidence to prove that the statement referred to the plaintiff.

Other authorities from Indiana law support this conclusion. First, implicit in the standard the Court must apply—that the challenged statement must refer to "some ascertained or ascertainable person, and that person must be the plaintiff," *Schrader*, 639 N.E.2d at 261—is that defamatory words need not explicitly refer to a named individual; it is sufficient if the individual is "ascertainable." *Id.* But the only way an individual could be "ascertainable" but not "ascertained" is if evidence beyond the allegedly defamatory statement itself would allow one to ascertain the individual.

Second, Indiana's pleading and practice standards for defamation claims also support the notion that extrinsic evidence may be used to identify the subject of the allegedly defamatory statement. The relevant statute states: "In an action for libel or slander, it is sufficient to state generally that the defamatory matter published or spoken was about the plaintiff. If the defendant denies the allegation, *the plaintiff must prove at trial the facts showing that the defamatory matter was published or spoken about the plaintiff.*" Ind. Code § 34-15-1-1 (emphasis added). If

extrinsic evidence could not be considered in determining whether an allegedly defamatory statement referred to the plaintiff, there would be no additional "facts" at trial on which the plaintiff could rely to "prove" that the statement "was published or spoken about the plaintiff," *id.*—the plaintiff would have to rely solely on the statement itself.  By allowing the plaintiff to rely on additional facts at trial to prove that the defamatory statement concerned the plaintiff, it is clear that Indiana permits extrinsic evidence to be considered when determining whether the defamatory statement refers to an ascertainable person.

For these reasons, the Court concludes that it is appropriate to consider Wabash's extrinsic allegations when assessing whether the Second Commercial refers to Wabash.  Wabash's allegation that it was "the only tax preparer operating in Vigo County, Indiana which has a $1,000 giveaway, and it has marketed the giveaway extensively, through billboards, internet, and broadcast advertisements," [Filing No. 1 at 3-4],[3] is sufficient to make Wabash's identity as the subject of the Second Commercial ascertainable.  Accordingly, Wabash's defamation claim regarding the Second Commercial should not be dismissed.

**B.     Trade Disparagement**

Stadler moves to dismiss Wabash's trade disparagement claims under 15 U.S.C. § 1125(a) regarding both of Stadler's commercials.  "Section 43(a)(1)(B) of the Lanham Act . . .

---

[3] Stadler contends that Wabash's allegation that it was the only tax preparer in the area with a $1,000 giveaway is "nothing more than self-serving speculation, which does not deserve the assumption of truth on a motion to dismiss." [Filing No. 25 at 3.]  This is a non-starter.  First and foremost, in the same paragraph, Stadler recognizes that *Iqbal* held that "legal conclusions 'are not entitled to the assumption of truth' and 'must be supported by factual allegations' to survive a motion to dismiss." [Filing No. 25 at 3 (quoting *Iqbal*, 556 U.S. at 679).]  Wabash's allegation is precisely that—a factual allegation that it is the only tax preparer that offered a $1,000 giveaway, which supports its ultimate legal conclusion that the Second Commercial defamed Wabash.  As to whether the allegation is "self-serving," it certainly is; it was made by Wabash in its Complaint as support for its defamation claim.  But at this stage of the litigation the Court must "accept as true" all factual allegations, whether self-serving or not.  *Iqbal*, 556 U.S. at 678.

forbids the use of any 'false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of [the seller's] or another person's goods . . . ." *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 503 (7th Cir. 2009) (quoting 15 U.S.C. § 1125(a)(1)(B)). Stadler provides two arguments as to why Wabash's claim may not proceed, neither of which it adequately develops for resolution. The Court will briefly address each in turn.

First, Stadler contends that this claim should be dismissed because its "radio advertisements simply do not identify, with any degree of specificity, [Wabash] or [Wabash's] services." [Filing No. 15 at 7.] Stadler does not, however, attempt to develop this argument beyond this lone assertion. Unlike Stadler's arguments regarding the defamation claims, Stadler does not set forth the standard the Court must apply in determining what types of statements sufficiently identify the plaintiff so as to be actionable under the Lanham Act. [*See* Filing No. 15 at 7-8.] Indeed, other than a single citation to an Eighth Circuit case that sets forth the general elements of the claim, Stadler's identification argument is unaccompanied by any citations to legal authority. [*See* Filing No. 15 at 7-8.] The Seventh Circuit has repeatedly made clear that district courts are not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel," *Anderson v. Catholic Bishop of Chicago*, --- F.3d ----, 2014 WL 2959129, *3 (7th Cir. 2014), and the Court will not do so here.[4]

---

[4] Stadler also argues that the Second Commercial was not misleading or false (and thus not defamatory) because Stadler's "enrolled agents" referred to in the commercials are indeed different than Wabash's employees who only have PTINs. [Filing No. 15 at 8.] But even if this were true, Wabash contends that several other assertions in the commercials were false or misleading, and Stadler does not address those assertions. Dismissal is therefore inappropriate on this basis.

Second, Stadler argues that the statements in the two commercials were mere "puffery," which is not actionable under § 1125(a). [Filing No. 15 at 7 (citing *Schering-Plough*, 586 F.3d at 512; *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)).] Wabash responds that the statements in the two commercial do not constitute puffery. [Filing No. 21 at 6.]

The Seventh Circuit has described "puffery" as "meaningless superlatives." *Schering-Health*, 586 F.3d at 512. In *United Industries*, the Eight Circuit elaborated further, describing puffery as "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable under § 43(a)." 140 F.3d at 1180 (citation and quotation marks omitted). Unfortunately, Stadler does not identify the particular statement or statements in the commercials that supposedly constitute puffery. [Filing No. 15 at 7.] Indeed, other than citing *Schering-Plough* and *United Industries*, Stadler says not a word about how those cases apply to this one. Again, the Court is not required to "construct legal arguments for parties, especially when they are represented by counsel," *Anderson*, 2014 WL 2959129, at *3, and will not do so here.

The Court notes, however, that at least some of the statements in the commercials do not constitute puffery. For example, allegations that a competitor is "unethical" and its giveaway is a "scam," [Filing No. 1 at 3], are not "meaningless superlatives," *Schering-Health*, 586 F.3d at 512, "blustering," or "boasting" at all, *United Industries*, 140 F.3d at 1180; they are specific allegations of wrongful conduct on the part of a competitor.

For these reasons, Wabash's claims under the Lanham Act should not be dismissed. The Court is not suggesting that these claims are necessarily meritorious, only that Stadler has not shown that dismissal of them is proper at this stage of the litigation.

## IV.
### CONCLUSION

For the reasons explained, the Court **GRANTS IN PART** and **DENIES IN PART** Stadler's Motion to Dismiss. [Filing No. 14.] Wabash's defamation claim predicated on the First Commercial is **DISMISSED WITH PREJUDICE**. Wabash's defamation claim regarding the Second Commercial and Wabash's Lanham Act claims as to both commercials remain in the case.

07/22/2014

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**